Okay, Mr. Ackerley. Good morning, Your Honors. May it please the Court. My client sold over a million dollars' worth of trees out of the State of Oregon to an enterprise called BFN Operations located in Dallas. The trees were shipped to Michigan and the State of Tennessee. My client was not paid for those trees that were sold, and my client made demand upon the debtor, BFN Operations, and BFN Operations eventually filed bankruptcy in Dallas, Texas. My client is a beneficiary of a statutory lien, agricultural products lien in the State of Oregon, which essentially arises upon the sale of the products, agricultural products here, trees, and then continues for a period of 45 days as long as notice of the extension of the statutory lien is provided. If it please the Court, there's a number of interesting issues that are raised by this appeal. I'd like to jump to the very end, if you please, of the district court's decision, because I think the district court went through quite an analysis on conflicts of law. And the district court ended up applying Texas law, ended up resolving a number of issues, but in the very end, the district court honed in on an issue which I want to raise with the Court at the top side, and then if we have time, I'd like to get into the other issues or any questions the Court might have. At the end of her decision, the district court said, because Fishback failed to comply substantially with Oregon law, any lien Fishback had under Oregon law expired and is therefore unenforceable. So in the bottom line for the district court, although there were all these interesting conflicts of law issues, the district court came down to the very question, one of which was raised by the appellee, and that was, did we properly give the notice required under the Oregon statute within 45 days? What we did was we filed UCC1 statements in the State of Michigan and the State of Tennessee. We contend that the filing of these statements substantially complied with the extension, the 45-day extension under the Oregon law. And by that, I mean Oregon law says that you have to extend the lien. Yes. Yes. Let me understand what you're saying. The premise of the statement you just made is that Oregon law applies even to the products that were delivered in Michigan and Tennessee. That's the premise of your argument here. Yes. Okay. I just wanted to make sure. Yes. The law, we would contend that the law applies extraterritorially to the other States because of the nature of it. But you also argue too, don't you, that this is not a UCC case? At some point in the briefing, you argue that it's strictly an Oregon law case. Precisely. If it please the Court, this is a statute on the Oregon books under the agricultural laws. It's not a UCC provision. This is not a UCC perfection in agricultural goods issue. This is a statute which says if you sell agricultural products, you gain a lien. Many States have this. The State of Texas has it. There are several Federal statutes that are out there that protect the industries such as eggs and beef. Contingent on the State to where the products are delivered? Well, we contend that the lien is effective against PNC, the lender, even though the products were delivered to the State of Michigan. So your position, as I understand it, is we're in Oregon. The products are in Oregon before they are shipped. Once that purchase is made, Oregon law applies. We don't need a choice of law decision. We don't need Tennessee or Michigan or any UCC provisions. That's what's thrown me off when you just said I filed a UCC or your client filed a UCC in Tennessee and Michigan. So it just seems like we're mixing and matching a little bit. Well, what we have here is we have a statute. Well, we have two things. One is a statute that creates a lien, but we also have in the contracts between the parties, we have a choice of law provision which says Oregon law is going to apply. So with respect to BFN operations, if they had not filed bankruptcy, we would contend that we would have that Oregon law, that Oregon lien that would apply in our favor that we could then enforce against all of the inventory, all of the proceeds of the sale of the inventory of BFN, no matter where that inventory was located and whatnot. Although BFN's operations in terms of its monetary operations were in the State of Texas. And it's not a UCC issue, okay, because it's a statutory lien issue, we believe that that lien should follow wherever the account debtor's inventory is located, so long as we have properly given the notices under State law. With respect, so we think that the district court got it wrong because we think we substantially complied with the statute. The statute says by just so I understand, I know this is really complicated, by filing the statements that you mentioned in Michigan and Tennessee, you want to argue that you substantially complied with Oregon law, right? Yes. What we did, Oregon law requires that within 45 days of the lien coming into automatic effect, that a notice has to be provided to the debtor, the supplier, I mean the buyer. And we filed those notices where the product was shipped in Tennessee and in Michigan. You filed one in Oregon as well, right? Oh yes, yes, in Oregon as well. But BFN had no operations in the State of Oregon. BFN has operations in the State of Michigan and the State of Tennessee. These trees were not shipped to end buyers like Home Depots or Lowe's. These were shipped to BFN's operations and business operations in Michigan and Tennessee, thereby putting them on notice. And so we believe we substantially complied with the statute, and we believe that then the liens would apply to, as against BFN's products and inventory. Now, BFN went into bankruptcy, and BFN has a lender, and the lender, P&C, the appellee, has a lien on all of its inventory, and that's where the clash is now. Who has the prior lien? We understand that. We understand that. Let me just ask you this with respect to your Michigan and Tennessee filing arguments. Does your argument assume that your lien was properly perfected with respect to the Michigan and the Tennessee products? Properly perfected, right? Because you only trump the P&C if you properly perfected the liens, right? Correct. We would not have a — well, first of all, we would not be a secured creditor in the sense of having a lien, and we would not have — we would not prime P&C's lien. Why did you — what's your argument about how you properly perfected the liens? Perfection is automatic. Perfection is — once we sell the product to BFN, perfection is automatic. We have to then continue that with — if we file something in the — in Tennessee and Michigan, we file UCC-1's financing statements, to continue the liens in effect. Of course, as you know, the district court found you didn't properly perfect the liens with respect to Michigan and Tennessee. Yes. And correct me if I say anything wrong, which is always a possibility, because of the name that you put on the — on the statement, isn't that right? I think — That's what the district court reasoned. We have no — we do not disagree that we — under Oregon law, to extend the lien, you have to file a notice, a notice within 45 days. We didn't file the statutory notice. What we did was we filed a UCC-1 financing statement. And our — this is a procedural extension of the lien. It's not the — the lien is perfected. Now you have to extend it by doing something within 45 days. We cited a number of cases in our brief for — that recognize that the Oregon — at the Oregon level, the courts have recognized that substantial performance, substantial compliance. If I can just understand one thing about your argument. The district court had some pretty substantial reasoning about the name, you know, BFN — I'm going to get the name wrong — but the addition of the terms ABN Zelenka Farms, right? Your Honor, I'm apologizing. I don't remember the name issue. That's the rationale for which the district court said that the liens were not properly perfected, you know, because of the search criteria in Michigan and Tennessee. The reason I'm asking about it is, as I read your brief, you're not making any argument with respect to that issue on appeal, the name issue. With respect to the — to the filing of UCC-1s. Well, with respect to the name issue that the district court found. I believe the UCC-1s were in the name of BFN operations. Okay. Okay. Certainly they were not in the name of PNC. And we had no — until the bankruptcy was filed, we had no knowledge of PNC. And so the issue — the issue that we're confronting, and I think the district court was confronting, is whether or not we substantially complied with the notice provisions. And I think that is a very important issue. I mean, that is one issue the district court recognized. But, of course, as you know, the district court started with choice of law. Yes. Which I think was the proper place to start. Yes, I think so. Do you have an argument for us about that? Yes. And my argument on that, Your Honor, is that in this court's decision in Benchmark Electronics, which is 343, 5th, 3rd, 7, 19, 2003 decision, we talk about it at pages 20 to 22 of our principal brief. In Benchmark, this court recognized that Texas gives effect to choice of law provisions. And essentially what we're dealing with here is if the district court is correct in determining that Texas law is the proper law to apply, we disagree. We disagree because in the contracts between the parties, they established that Oregon law should apply, and we think that that should control. But, you know, there are substantial relationship tests as well. But if that's correct, if the district court is correct, Texas law clearly recognizes that parties can contract with respect to conflicts of law. Here, the parties, that is the debtor, the underlying debtor, BFN operations, and my client, clients contracted that Oregon law would apply. All right? Well, what's your response to the argument that contracting, that choosing a law, choice of law provision in a contract doesn't apply to third parties? Yeah. Your Honor, with respect to that issue, we cited — there's nothing — I'm not aware of any case in the Fifth Circuit, and I think the district court also indicated as well. But we think the court should be guided by the U.S. Airways v. Elliott decision, which we cite at — in our principal brief on page 22 and 23. This is, albeit an unreported decision out of the United States District Court, Eastern District of Pennsylvania in 2008. The court there said that choice of law provisions are enforceable against nonparties that are closely related to the contractual relationship or that should have foreseen the governance of the clause. Clearly, PNC was not involved in the sale of the produce at issue or products at issue. But they certainly should have foreseen the governance. In today's world, all right, just about every State has an agricultural lean product preservation provision. PNC is a national banking association, very sophisticated. They're lending all over the United States and world. They should be aware of these statutes. They should be aware that they're going to be impacted by these statutes. And so we think the argument that we're making is that they should be bound by the provision because they certainly should have foreseen the application of the clause. What is your response to the argument that Texas law does not allow parties to contract — to have a contractual choice of law provision with respect to priority of a lean? My argument would be that — This case is really about lean priorities. It's not about contracts, per se. It's two different things. This is where I think the district court went awry, and that is analyzing this as a UCC issue. It's not a lean priority issue from the UCC perspective. But this is a case about lean, agricultural products leans, right? You can see that. Yes. And it's about the priority of those. And so we initially argued that Oregon law applies, and Oregon recognizes the provisions in contracts. And Texas acknowledges these provisions in contracts. And so why wouldn't you recognize the provision in the contract was our first go-to position? And in that respect, we essentially argued that you ought to give credence to the law, the law that the parties agreed to. We did business — the stipulations are we did business with this company for years, over 20 years. And, in fact, they — we had disputes in which we resolved them through Oregon law. The only reason this issue is coming up is now we have a bankruptcy in which a lender, third-party lender, is now claiming that our lien does not prime their lien. And so we're saying that, yes, it does because the parties agreed to Oregon law and the lien statute. Second is they should be responsible because they should have foreseen the issues that are happening in this case, that are happening here. They should have foreseen. How would PNC, as a third party, have foreseen the party's choice of law provision? Not the choice of law provision. I think what they're foreseeing is that Oregon law would apply, the Oregon law lien statute would apply, okay, because, remember, BFN is a wholesaler of agricultural products. We were not the only supplier. Hundreds, literally hundreds of suppliers across the United States. To me, those sophisticated lenders should have been looking at laws that would have affected their lien, i.e. State laws that would have imposed liens that would have primed their interest. I see my time is up. I'll yield to the other side. Thank you. Yes, you've saved time for rebuttal. Five minutes, Your Honor. Mr. Jones? Good morning. If it pleases the Court, let me first turn to the choice of law issue because I think that is, among other things, I think it is pretty cut and dried, but let me comment on some, what I regard as critical flaws in the argument that the appellant is making, and I think I just heard some of them in the oral argument also. And so with regard to the Texas choice of law issue, which I think is very critical here, let me address three of those issues. The first one is, I think, and again, I think it is apparent from the argument that we just heard, that the appellant is confusing the concept on one hand of the law that creates a lien with the concept, on the other hand, of what law addresses perfection and priority of the lien. And that's where what Mr. Akerle argues is that he says that the district court errs because the district court relies on what he calls the UCC to determine choice of law for perfection and priority. And he says, we're not asserting a lien under the UCC. We're asserting a lien under an Oregon statute. Well, the UCC doesn't create these principles of perfection and priority. And the provision that the district court referred to, which is controlling here, is 9302 of the Texas Business and Commerce Code, which says that with regard to an agricultural lien, that the local law of the jurisdiction, where the product is located, is what governs the choice of law. That's what the Texas Business and Commerce Code says. It doesn't matter whether you call that the UCC or anything else. That's the Texas statute. And when the Texas statute goes on to define agricultural liens that that provision applies to, it defines agricultural liens as any interest in farm products created by statute. It doesn't say created by this statute. It doesn't say created by a Texas statute. It doesn't say created by the UCC. It says created by statute. This is a lien that is created by statute in Oregon. And therefore, when you look, as the district court did, to the choice of law issue, the court looks to 9302 of the Texas Business and Commerce Code, which very clearly says that the applicable law is the law of the jurisdiction where the product is located. Here, then, for the most part, that is the products were delivered to Tennessee and Michigan. That's where they were located. And that's the law, then, that the district court applied to determine perfection and priority. Mr. Jones, I know that the district court recognized sort of a gap in our law about whether you apply the state choice of law or some sort of federal common law. I know the courts have gone different ways on that. And as I understand it, our court has not decided that issue. Is it — but as I also understand it, the district court said it doesn't matter because following either one of those avenues leads you to the same result. Correct. Is that — I mean, is that something you're defending here? I mean, do you think that's correct or do you think there's some — in other words, do we have to wade into that issue in this case and resolve whether we apply federal common law or state choice of law? No, Your Honor. I think that is correct. And I don't think that it is necessary to wade into that because I think, first of all, I think it's clear from the — that the — that what the district court said, which is if it doesn't matter, I don't have to address this issue, I think is clear from the precedent of this Court, Merritt and some other cases that we cite. But I also think that it is — it is the same. Assuming that the Court were not to apply the Texas — and let me just say, by the way, what the district court recognizes is there is some split of authority on this. I will say that in looking at those cases, there does seem to be a predominant trend in the cases to say that you do look to the choice of law of the forum, just like you would in a diversity case. But there are some cases — and the circuit courts that I've seen do tend to say that, that you do look to the forum law, which here would be Texas. However, if there is — there is authority that goes the other way and the Court says I don't have to decide this, which I do think is correct, if this Court were to feel compelled to look at a — what I would call a federal independent standard, what the — what this Court has said in Merritt is that if I'm — if we're going to do that, it says that that is synonymous with the restatement of conflict of laws, section 6. That's what this Court has said. It said if we're going to — if we're going to look at — in a situation where we have to create that kind of a federal independent standard, we look to section 6 of the restatement. And if you turn to section 6 of the restatement, it does a couple of things. The first thing it does is says that — the first thing you would look at would be whether or not there are other principles in the restatement that are specific to this kind of dispute. And the Court — excuse me, not the Court — the restatement does then say — one of the examples that it uses for that is an issue regarding perfectional priority of a security interest, and the restatement — and we cite this in our brief — the restatement does say that in such an issue, you would look in the first instance, if it involves a security interest, to sections 9301 to 9305 of the UCC. That, of course, does then encompass section 9302 that we're talking about here today. And we also point out in our brief that that kind of a notion of looking in the first instance to the UCC is entirely consistent with the precedent of this Court. We cite Woods-Tucker, where this Court says that generally the UCC should be considered a federal law of commerce. We cite the Haas Estate case, where this Court talks about the importance of maintaining a simple, uniform, nationwide system of determining perfection and priority issues. Secondly, what the district court does and what you would do under restatement section 6 is to look at these generalized factors that you weigh to determine most significant relationship, and those are in section 6.2 of the restatement. And as the district court pointed out, if this Court looks at those factors, every single one of those factors leads overwhelmingly to arguing in favor of the location of the product to determine the applicable law, not some other, not something else. And it is, I'm sorry to interrupt, it is undisputed in this case that the products are physically located or the relevant products are physically located in Oregon, Michigan, and Tennessee? That is correct. Am I right? And virtually all are and were immediately shipped to Michigan and Tennessee, I think that with the exception of about $26,000 of product that was sold to, that remained in Oregon, and it's because of that that the Court addresses the Oregon continuation and the substantial compliance issue in any event. But yes, yes, it is undisputed that those were shipped to BFN in Michigan and in Tennessee, and that's where BFN took possession of the products in those states, and they remained there until all of the assets of the debtor were sold and then the proceeds were then realized. So the district court weighs all of these factors and concludes that if you look at those factors, the needs of an interstate system, basic policies underlying the key field of law here, and what the Court points out is that credit is extended more easily when creditors can easily determine priority and perfection of liens, certainty, predictability, and uniformity of result, ease in application of law, policies of the interested states, the Court points out, and I think in a well-reasoned manner, that the policy here that the Court weighed and this Court should also weigh is that if you're applying the law of the state where the product is located, that provides a simple, predictable, consistent method of determining lien perfection and priority, and that's what this is about, and that's why, yes, I believe that you would come to the same result as Texas law by applying if the Court felt compelled to apply an independent Federal standard. Now, what's your response to the Mr. Ackerley's argument that the nurseries and BFN have a choice of law provision in their contract that chooses Oregon law? Right. Yes. That is, there was language in the, interestingly, in the invoices of one of the growers, Fishback, nothing in the invoices from Surface, one of them, but in Fishback, there is language that says all matters regarding these transactions will be governed by Oregon law. That is limited. I think the case law is pretty clear, and especially in Texas, that that is limited to interpretation of issues involving interpretation of the contract between the parties to the contract, and the cases that Mr. Ackerley cites and cited in his argument to that effect, benchmark and U.S. Airways. U.S. Airways may have also involved tort, but it certainly involved only contracted tort. None of those cases address perfection and priority issues, and in fact, very importantly, the Texas statutes are very clear that when a provision of a statute specifies, there are certain categories of types of disputes, and when a statute specifies the choice of law with regard to some of those categories, that that would govern despite any contrary agreement, and that's section 1301B of the Texas Business and Commerce Code, and as we brief, and in fact, as the court questioned with Mr. Ackerley, that includes law governing perfection and priority of liens, and so the most important answer to the court's question is that Texas codification explicitly says that you cannot alter the applicable law with regard to perfection and priority with a provision in the invoice, and interestingly, that section of the Business and Commerce Code, the comments to that section actually go on to explain why that's true and why that is good policy. Comment 5 explains that this promotes an orderly, predictable method for determining liens, and the comments to the court say that if you alter that law by contract, then that would undermine the central tenet of commercial finance, which is an orderly, predictable method for centralizing lien notices. So I would submit, as the district court found, that the Texas law on this issue is pretty cut and dry. Now, with regard to, so what Texas law says very clearly, I think, and then what federal independent law would also say is you look to the state where the product is located. And just so I understand, because this is complicated for me, that was the choice of law part. That's how we figure out where the arrows are pointing to the substantive law that governs the perfection and priority of the agricultural lien. Is that right? Correct. That's the second step. I think of that as the merits of the priority. Correct. So that's where we're moving to now. Correct. So, and again, let me emphasize that what I'm about to walk through that concept, this, the appellants have never disputed what I'm about to walk through. They've never disputed it, and they cannot dispute this. So what the court finds is that under Michigan and Tennessee law, there are filings there. And they did file. They filed UCC-1s. In fact, Mr. Akerle just pointed out he did file UCC-1s. The problem is they were fatally defective. What Michigan and Tennessee law require to perfect is you have to file a financing statement. It must provide the correct name of the debtor. Generally, what the correct name of the debtor is going to mean is that it's going to be the registered name of the debtor. So here, these are, these entities are registered, I mean, BFN is registered Delaware entity, and so its proper name is BFN Operations, LLC. Now, the problem was that when they filed the UCC statements, they, on the name of the debtor, they wrote BFN Operations, LLC, ABN Zelenka Farms. So there is what I would call surplusage. There's additional language there. And what the UCC says is to determine whether that's fatal or not, you have to then go to the search logic in each particular state. So we did that, and we put on undisputed evidence before the court that if you do that in Michigan and Tennessee because of the search logic, you can't find this. Because as the district court pointed out, it's not like Google. If you ran a Google search for this entity and you had surplus language, it would still come up. You would get a hit, positive hit, and therefore, if PNC was searching for any other lien there, you would get a hit. But when you search according to that logic, the search logic of those states, and incidentally, this is exactly consistent, because I've had another case like this, it's consistent with the Texas search logic also. It's a very common search logic where the surplus language will prevent you from hitting this. And so because the searches occurred and you couldn't find it under the UCC, that is fatally defective. It is considered seriously misleading under the UCC and under the applicable law in Michigan and in Tennessee. And because the name could not be found, they are not perfected. Mr. Jones, what I was trying to get at with Mr. Ackerley, and I was doing it in a confusing way, no doubt, is that that's all very interesting and enlightening to me, and I read that in the district court's opinion. I don't see an argument being made to contest that conclusion before us. In other words, I don't see any arguments being made about the search logic and the name and the — is that your — is that correct? I mean, there's no argument being made to us that that was incorrect. That is correct. I do not think the opponents are contesting it. I've not — they have not contested that. That is correct. Final issue, let me move to briefly, and this is the issue of substantial compliance with Oregon law, because as the — there was product, albeit a minor amount, there was product that was delivered to Oregon. And Mr. Ackerley, in his argument, counsels in his argument said that we substantially complied with Oregon law, which requires that you must file a notice of lien to continue the — your lien under Oregon law. We substantially complied with that by filing UCCs, UCC1s, and he said in Michigan and Tennessee — let me just stop there and say, well, we just established — we couldn't — we would never have been able to find those anyway, because they were defective. And then he said we filed a UCC1 in Oregon also. What is undisputed, and again, the district court discusses this, and we established all of this in the stipulated facts, is that you've got to file a notice of continuation of this lien within 90 days after the invoice date. The invoice — the — 90 days after the 90 days — I'm sorry, I misstated. So the invoices were due 90 days — that would be June 27. Forty-five days after that, August 11, 2016. They had to file a — what's called a notice of continuation of lien under Oregon law. It's very specific under Oregon law. You've got to file it to indicate to the world that you're intending to continue this lien. They did not do that. They did file it. Fishbeck did file one, but they filed it late. They filed it almost three weeks late. I understand that that's not contested here. The argument is that we filed something else and that constitutes substantial compliance. They argue substantial compliance with the filing of the UCC1. And as the district court pointed out, the — that — here's what's required by the — and the statute, Oregon statute, is very specific in terms of what's to be required. You're supposed to — it's based before the due date — I mean, after the due date, within — it is — it is supposed to name — it's supposed to be filed after the date due, supported by affidavit, name the identity, state the amount claimed, and it's supposed to use a specific form. As the district court pointed out, that is, the degree of noncompliance here was substantial. And what the district court points out is the purpose of a UCC1 is very different than the purpose of this — of this notice of lien. And a UCC1 cannot serve the purpose of the notice of lien because what this notice of lien is supposed to be telling you is that the lien is being — is actually being continued. What a UCC1 is doing is telling you about priority of — of different liens, but it doesn't give you the information that the Oregon legislature is requiring here to tell you that that lien is being — is being continued. And so, it — and as the district court also pointed out, if that UCC1 were intended to serve the purpose of this notice of lien, then the Oregon legislature wouldn't have required both. And the requirements of what you're supposed to provide are very specific. As the court pointed out, the Oregon law standard on this is that substantial compliance requires compliance with all essential matters necessary to ensure the — every objective of the statute. And the UCC1 actually complies with none of the requirements, none of the requirements of this statute, and certainly wasn't done on the form that the — that the Oregon legislature requires to be submitted. Thank you. All right. Thank you, Mr. Jones. Vickerley, you've saved time for rebuttal. I'm assuming Mr. Jones is pronouncing your name correctly and that I got it wrong. Is it Akerley? Since I was a wee little kid, it goes both ways. Akerley is actually correct. Okay, Mr. Akerley. Thank you, Your Honor. Just briefly, my clients are not lenders, okay? My clients are suppliers of agricultural products. My clients, as a result, you know, they don't — they never treated BFN as a — as a creditor — I mean, sorry, as a debtor. They just extended credit and expected to be paid. What they — what they have is the benefit of a statute in Oregon. And the statute says, specifically, an agricultural produce — producer that delivers or transfers agricultural produce for consideration to a purchaser has a lien for the contract price of that produce for — or for the reasonable value, if there is no contract price. An agricultural producer that claims a lien under this Subsection 1 need not file any notice in order to perfect the lien. The lien is perfected automatically under Oregon law. Akerley, do you know if there's an Oregon choice of law provision that applies to agricultural liens? And if so, what would it — how would it apply to this situation where you have some products in Oregon, some in Michigan, some in Tennessee? I'm not aware of a provision in Oregon statutes that provide for a choice of law in agricultural product situations. What we have here is that at least — at least as to Fishback Nursery, the largest supplier by all accounts, is a contractual provision that stated that Oregon law would apply. Second is, the terms on the website also say agricultural products — I mean, Oregon law is going to apply, and that is incorporated. Those terms are incorporated as well. The significance of this is, it's not a — it's — I again come back to the fact that it's not a UCC issue, per se. And I think the analysis in terms of whether we perfected our lien according to UCC law is not — is not correct analysis. Now, with respect to the continuation of that lien, okay, it's stipulated. We did not file the notice form that was required by the Oregon statute. Now, there's no law on this particular issue. You know, failure to comply, failure to not file the notice form, but we cite in our brief at pages — I think it's page one — page 22 of our principal brief a series, a long series of cases where the courts have determined that the procedural aspect, that is, what's necessary to comply with the extension of the notification, is essentially a substantial compliance provision. We believe that the UCC ones that we filed gave substantial compliance or were substantial compliance with respect to the notice provision that would extend the lien. Our lien exists. Now the question then becomes, is it enforceable against PNC? Does it prime PNC's lien as a secure creditor? And we believe that it does. Thank you, Your Honor. All right. Thank you, Mr. Akerley. Your case is under submission. We'll take a brief recess before hearing the —